CARL DAVID NICHOLSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RICHARD HARVEY NICHOLSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Nicholson v. Commissioner
Docket Nos. 438-80, 439-80.
United States Tax Court
T.C. Memo 1984-299; 1984 Tax Ct. Memo LEXIS 375; 48 T.C.M. (CCH) 272; T.C.M. (RIA) 84299; June 11, 1984. Harold A. Miller III, for the petitioners. Willard N. Timm, Jr., for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined that each petitioner was liable as a transferee of Thomas F. Nicholson for deficiencies in Federal income tax and additions to tax in the amount of $17,500. The only issues for decision are whether *377 petitioners are liable for these amounts pursuant to section 6901[1] as transferees of Thomas F. Nicholson's assets. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and accompanying exhibits are so found and incorporated herein by reference. Petitioners Carl Nicholson and Richard Nicholson are employed as an airlines baggage handler and production foreman, respectively. At the time of the filing of their petitions, petitioners Carl Nicholson and Richard Nicholson resided in Winston and Forest Park, Georgia, respectively. Thomas F. Nicholson (sometimes hereafter referred to as the "transferor") is petitioners' father. For many years, he practiced law as a sole practitioner in Forest Park, Georgia, which is now a suburb of Atlanta. During 1968, 1969, 1970 and 1971, the transferor rendered legal services and received taxable income. The transferor failed to file Federal income tax returns for taxable years 1968, 1969, 1970 and 1971 and also *378 did not pay any portion of his Federal income tax liabilities for such years. On September 11, 1972, the transferor was contacted by an Internal Revenue Service agent and was informed that he was under investigation for failure to file Federal income tax returns. On September 21, 1972, the transferor conveyed his home at 4847 Evans Drive, Forest Park, Georgia, (hereafter referred to as the "Georgia real property") to his son, petitioner Carl Nicholson. The deed effectuating this conveyance was notarized, witnessed and duly recorded in accordance with Georgia law. After this conveyance, the transferor was rendered, and still is, insolvent and without assets with which to pay his tax liabilities for taxable years 1968, 1969, 1970 and 1971. At the time of this conveyance, the transferor's equity in this property was $17,500. On or about December 28, 1972, the transferor instructed his son, petitioner Carl Nicholson, to transfer the Georgia real property to his brother, petitioner Richard Nicholson. A deed, dated December 28, 1972, which effectuated this conveyance, was notarized, witnessed and duly recorded in accordance with Georgia law. No transfer of monetary consideration *379 accompanied either conveyance despite acknowledgements in both deeds that small sums of money were part of the consideration.The transferor continued to reside in the home located on the Georgia real property after these conveyances up to the date of trial. On November 8, 1974, the transferor pled guilty to willfully failing to file Federal income tax returns (section 7203) for taxable years 1968, 1969 and 1970. On September 5, 1975, the following deficiencies and additions to tax were assessed against the transferor: Taxable
Section
Section
Year
Deficiency
6653(b)
6654(a)
1968
$4,506.45
$2,253.23
$140.85
1969
5,685.30
2,842.65
181.93
1970
2,544.85
1,272.43
81.40
1971
1,410.70
705.35
45.14
On October 12, 1979, the Commissioner mailed statutory notices to petitioners in which he determined that they were each liable in the amount of $17,500 for the deficiencies in Federal income taxes and additions to tax owed by Thomas F. Nicholson for his taxable years 1968, 1969, 1970 and 1971, as transferees of his assets. OPINION The only issues for decision are whether petitioners are liable for the deficiencies and additions *380 to tax of the transferor with respect to his taxable years 1968, 1969, 1970 and 1971, pursuant to the provisions of section 6901. [2]
Several important considerations accompany the application of this statute. First, this section does not create or impose any new obligations upon the transferee *381 of property of a taxpayer; rather, this provision merely affords respondent a mechanism for collecting such tax otherwise determined to be due. Kreps v. Commissioner,351 F.2d 1, 4 n. 2 (2d Cir. 1965), affg. 42 T.C. 660 (1964). Second, any liability of a transferee of property of a taxpayer is to be determined "at law or in equity" under the applicable State law as there is no controlling Federal law in the area. Commissioner v. Stern,357 U.S. 39, 45 (1958). Third, the tax liability of the transferor can be collected only once even though several transferees may be liable. Holmes v. Commissioner,47 T.C. 622, 627 (1967). Finally, respondent bears the burden of proving that a petitioner is liable as a transferee of property of a taxpayer although this burden does not include a showing that the taxpayer was liable for the tax.Sec. 6902(a); Rule 142(d). The applicable State law is that of Georgia as all relevant conveyances occurred there. Commissioner v. Stern,supra at 45; *382 Fibel v. Commissioner,44 T.C. 647, 657 (1965). The pertinent parts of Ga. Code Ann. sec. 28-201(3) (1980) provide that: The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz: * * * 3. Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance. [3]
A conveyance fraudulent to creditors in violation of Ga. Code Ann. sec. 28-201 (1980) may be set aside. *383 United States v. Hickox,356 F.2d 969, 972 (5th Cir. 1966).This remedy is available to any creditor at the time of the transfer who thereafter reduces his claim to a judgment lien. [4]
The parties have stipulated that as a result of the transferor's conveyance of the Georgia real property to his son, petitioner Carl Nicholson, the transferor was rendered insolvent and without assets with which to pay the deficiencies in tax and additions to tax for his taxable years 1968, 1969, 1970 and 1971. No monetary consideration accompanied this conveyance. We have previously held that non-monetary consideration such as "love and affection" does not constitute valuable consideration for the purposes of Ga. Code Ann. sec. 28-201(3) (1980). [5] Accordingly, the transferor's conveyance to petitioner Carl Nicholson *384 was fraudulent and could be set aside under State law. In order for petitioners to be liable for the transferor's tax liabilities pursuant to section 6901, the following elements must also be shown: (1) The transfer of property must be made during or after the period for which the liability in question has accrued; (2) The transferor must have been liable; (3) All reasonable efforts must have been made to collect the tax liability from the taxpayer before the proceeding against the transferee is commenced; (4) There must have been a transfer of assets having value to the transferee from the transferor or from some preceding transferee (the transfer might be one in a series of distributions which eventually rendered the transferor insolvent); (5) This transfer of assets must have left the transferor insolvent (the Commissioner must prove that the transferor was insolvent at the time of the transfer or made insolvent by the transfer); and (6) The proceeding against the transferee must have been begun within the applicable period specified in the statute of limitations. [9 Mertens, Law of Federal Income *385 Taxation, sec. 53.06 and cases cited therein (rev. 1982). Fn. ref. omitted.] Respondent has satisfactorily proven all of these matters with respect to the immediate petitioners. Each conveyance of the Georgia real property occurred after the transferor's tax liabilities for taxable years 1968, 1969, 1970 and 1971 accrued.[6] The parties stipulated that the transferor was liable for his Federal income taxes and additions to tax for his taxable years 1968, 1969, 1970 and 1971. All reasonable efforts were made to collect the transferor's tax liabilities from the transferor prior to the institution of these proceedings. Such efforts were fruitless as the September 21, 1972, conveyance rendered the transferor insolvent and he has remained insolvent through the date of trial. Further, the transferor conveyed the Georgia real property, in which he had $17,500 of owner equity, to petitioner Carl Nicholson on September 21, 1972, and he, in turn, conveyed this real property to petitioner Richard Nicholson on December 28, 1972. Finally, the applicable period of limitations has not expired with respect to petitioners since the transferor never filed any of the required returns for his taxable *386 years 1968, 1969, 1970 and 1971. [7] Therefore, respondent has proven all of the elements necessary for the imposition of transferee liability upon these petitioners. Petitioners' remaining contention [8] is their claim that the real property *387 conveyances among the Nicholson family were invalid under Georgia law; hence, if the transferor is still the true owner of the real property, they (the petitioners) can not be liable as transferees pursuant to section 6901. In support of this argument, petitioners assert that, under Georgia law, an owner of real property must deliver the deed to the new owner in order to effectuate the transfer. [9] Although the recording of an otherwise valid deed raises a presumption of delivery, [10] petitioners claim that they have rebutted this presumption and demonstrated that Thomas F. Nicholson never delivered the deed dated September 21, 1972, to petitioner Carl Nicholson and petitioner Carl Nicholson never delivered the deed dated December 28, 1972, to petitioner Richard Nicholson. Respondent contends that petitioners have failed to rebut the presumption of delivery which attached to the deeds upon their recording; hence, transfers, although fraudulent, occurred. *388 Although we need not normally address this issue because it was not timely raised in petitioners' petitions, [11] a brief discussion is appropriate. First, both deeds in question specifically recite that they were "[s]igned, sealed and delivered in the presence of" (emphasis added) the witness listed on the deed. Neither attesting witness appeared at trial; hence, these witnesses were unable to corroborate petitioners' claim that no delivery occurred and that the attesting witnesses intentionally misrepresented that delivery occurred with respect to both deeds. Petitioners' failure to present these witnesses' testimony or satisfactorily explain why it was not available on such a crucial matter warrants the inference that such witnesses' testimony would not have been supportive of petitioners' position. Wichita Term. El. Co. v. Commissioner,162 F.2d 513, 515 (10th Cir. 1947). Finally, petitioners offered only their own testimony and that of the transferor, Thomas Nicholson, in support of this claim. All of these individuals have a vested interest in this position in that, if accepted by this Court, petitioners would prevail in the instant case while the transferor *389 would still presumably be able to continue to reside in the Georgia real property. After observing the demeanor of the transferor and the petitioners, we do not believe their testimony. [12] Therefore, we reject petitioners' claim that no delivery of the deeds occurred with respect to the Georgia real property. Accordingly, the Commissioner's determinations are sustained.
Decisions will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the relevant years, and all rule references are to this Court's Rules of Practice and Procedure.↩
2. The pertinent parts of sec. 6901 provide: SEC. 6901. TRANSFERRED ASSETS. (a) Method of Collection.--The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income, Estate, and Gift Taxes.-- (A) Transferees.--The liability, at law or in equity, of a transferee of property-- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes), * * *. * * * (h) Definition of Transferee.--As used in this section, the term "transferee" includes donee, heir, legatee, devisee, and distributee, and with respect to estate taxes, also includes any person who, under section 6324(a)(2), is personally liable for any part of such tax.↩
3. Respondent asserts that the conveyance made by the transferor also violated par. 2 of Ga. Code Ann. sec. 28-201 (1980) which provides: 2. Every conveyance of real or personal estate, by writing or otherwise, and every bond, suit, judgment and execution, or contract of any description, had or made with intention to delay or defraud creditors, and such intention known to the party taking. A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid. Due to our holding that the conveyance violated par. 3 of this section, it is unnecessary to decide this question.↩
4. The Federal Government became a creditor of the transferor at the end of taxable years 1968, 1969, 1970 and 1971 when his income tax liabilities for the respective years arose. Short v. United States,395 F. Supp. 1151, 1154↩ (E.D. Tex. 1975). Further, the Government became a lien creditor when his taxes were assessed. Secs. 6321 and 6322.
5. Hatcher v. Commissioner,T.C. Memo. 1983-192↩.
6. The transferor's liabilities for his Federal income taxes and additions to tax accrued at the end of the respective taxable years. ↩
7. Sec. 6901(c)(1) provides that the period of limitations for assessment of transferee liability against an initial transferee is 1 year from the last day respondent could make an assessment against the transferor. Due to the transferor's failure to file his tax returns for taxable years 1968, 1969, 1970 and 1971, his tax liabilities for such years may be assessed at any time. Sec. 6501(c)(3). Although the transferor's liabilities for such taxable years were actually assessed on September 5, 1975, the last day the Commissioner could make an assessment against the transferor and not the date of the transferor's assessment, controls the running of the limitation of assessments with respect to petitioners for transferee liability purposes. Morley v. Commissioner,T.C. Memo. 1963-330↩.
8. We have previously rejected petitioners' statute of limitations defense. ↩
9. Smith v. Smith,202 Ga. 759, 44 S.E. 2d 486↩ (1947). 10. Stinson v. Daniel,193 Ga. 844, 20 S.E. 2d 257↩ (1942).
11. Rule 34(b)(4) provides that "any issue not raised in the assignment of errors shall be deemed to be conceded." ↩
12. The transferor's testimony is highly suspect. He is a former practicing attorney who used his legal knowledge to engage in a series of fraudulent conveyances upon his investigation for failure to file Federal income tax returns. Further, he subsequently pled guilty to willfully failing to file Federal income tax returns.↩